William E. **SHEA**, Plaintiff,

v.

**UNITED STATES of America,
et al.**, Defendants.

No. Civ.A. 98–21(RCL).

United States District Court,
District of Columbia.

March 31, 1999.

William E. Shea, Alexandria, VA, plaintiff pro se.

Alexander Daniel Shoaibi, Meredith Manning, Washington, DC, for defendant.

## MEMORANDUM OPINION

LAMBERTH, District Judge.

This matter comes before the Court on motion of the federal defendants Department of State and Foreign Service Grievance Board (FSGB) to dismiss plaintiff's amended complaint or, alternatively, for summary judgment. The defendants challenge plaintiff's standing to sue, and argue in the alternative that they are entitled to judgment as a matter of law because the challenged FSGB decisions were not arbitrary, capricious, or contrary to law. The Court finds that the FSGB applied an improper standard in one decision, in violation of agency regulation, and summary judgment will be entered in plaintiff's favor on that claim. The Court will uphold the FSGB's other decision and enter summary judgment in defendants' favor as to that claim.

### I. FACTS

During the years at issue, plaintiff William Shea was a career candidate in the United States Foreign Service (part of the Department of State), serving a limited appointment as a Vice Consul at the United States Consulate General in Monterrey, Mexico. His responsibilities in that position were primarily to gain familiarity with United States immigration law and to process nonimmigrant visa applications.

In September of 1995, plaintiff was not recommended for tenure by the first Commissioning and Tenure Board (CTB) to review his performance. After learning the results of the 1995 CTB, plaintiff filed a grievance with the State Department alleging that the Employee Evaluation Report (EER) covering his service from August 1994 to July 1995 contained falsely prejudicial comments and suffered from various procedural inadequacies. When this grievance was denied by the Department, plaintiff filed a second grievance challenging various aspects of an EER covering the period from 1993 to 1994. This second grievance was also denied.

Plaintiff appealed both agency decisions to the Foreign Service Grievance Board (FSGB). The FSGB awarded plaintiff some of the relief requested and denied other relief in two decisions issued in 1997. Plaintiff now seeks review of both FSGB decisions.

### A. *FSGB Case 96–094: Plaintiff's First Grievance*

Plaintiff was considered by a Commissioning and Tenure Board (CTB) for the first time in September of 1995; he was not recommended for tenure. After learning that he had not been recommended for tenure, plaintiff filed a grievance with the State Department on June 20, 1996 alleging (1) that several comments made in his 1994–95 EER were falsely prejudicial[1] and (2) that there had been procedural errors in the preparation of the 1994–95 EER.

In a written decision, the State Department found that the 1994–95 EER suffered from a number of procedural defects and ordered that the EER be removed from plaintiff's file and replaced with a standard "gap memorandum." *See* Admin.Rec. 96–094 at 46. Apparently of the view that the expungement of the 1994–95 EER made the plaintiff whole, the agency found it unnecessary to address plaintiff's substantive challenges to the EER (i.e., that it contained falsely prejudicial comments). *See id.* The agency did proceed, however, to consider plaintiff's request for a reconstituted 1995 CTB. Commenting that it was not unusual for a candidate not to receive a tenure recommendation from

his first CTB, the agency declined to grant a reconstituted 1995 CTB. *See id.* Instead, the Department ordered that, should plaintiff fail to be recommended for tenure by the 1996 CTB, he would be granted a third tenure review and an extension of time in class. *See id.*

On October 11, 1996, plaintiff appealed the agency's ruling to the FSGB, requesting that all falsely prejudicial material be removed from his EER, that he be immediately tenured or considered by a reconstituted CTB, and other relief. Although plaintiff was tenured shortly thereafter by the 1996 CTB, the FSGB considered the plaintiff's appeal and upheld the agency's decision to expunge the 1994–95 EER for procedural defects without awarding the other relief requested by plaintiff. *See id.* at 136–48. The FSGB declined to replace the defective 1994–95 EER with a "memorandum of performance" proposed by the plaintiff, finding that the gap memorandum was the fullest relief available to the plaintiff to correct errors in the 1994–95 EER. *See id.* at 144. The FSGB also held that the plaintiff had failed to establish his case sufficiently to implicate the burden-shifting provision of 22 C.F.R. § 905.1(b), a subject the Court will discuss in more detail below. *See id.* at 146. In short, the FSGB held that plaintiff had received all relief to which he was entitled. *See id.*

Plaintiff now challenges the FSGB's decision, primarily on the ground that the FSGB applied an incorrect burden of proof. He requests that the decision be

---

1. As a whole, plaintiff's 1994–95 EER is a glowing endorsement of his ability and performance. The EER form, however, has a section entitled "Areas for improvement." It was in this section that plaintiff's rater suggested that plaintiff should give more attention to detail and follow-through in some contexts, a sentiment which the reviewing officer supported but specifically noted improvement in this area.

With regard to both of the EERs challenged by plaintiff, plaintiff shows a meticulous parsing of language, so that statements such as "Bill is showing improvement in blah blah blah" is read to mean that Bill needs im-

provement, and thus as a negative comment on his ability or performance. This tendency, no doubt, is what has led to the defendants' remarks that plaintiff is overly sensitive to criticism, remarks at which plaintiff has in turn taken offense.

In support of plaintiff, the Court does agree that any negative comment may be considered prejudicial, in a strict sense. If also shown to be false, such a comment is grievable under 22 U.S.C. § 4137(b)(1). Thus, even the relatively minor criticisms highlighted by the plaintiff are properly considered in a review of the FSGB's decisions.

held arbitrary and capricious, set aside, and the case remanded to the FSGB.

### B. *FSGB Case 97–026: Plaintiff's Second Grievance*

After receiving the State Department's decision on his first grievance, plaintiff filed a second grievance with the agency challenging the few critical comments in his 1993–94 EER, which after the expungement of the 1994–95 EER constituted the sole evaluation of his first two years of service.

For the 1993–1994 review period, plaintiff received an unqualifiedly positive evaluation from his primary rater. His reviewing officer, Mr. Jake Dyels, then Consul General in Monterrey, also gave plaintiff an overwhelmingly positive evaluation, although he did comment that plaintiff's written work occasionally took longer than it should. Consul General Dyels wrote: "Solid, clear-thinking, dedicated and with supervisory skills, assuming that current performance levels continue, Bill Shea can and will serve successfully across a normal career span, including FS–01. However, I believe it is too early to recommend tenure." In his second grievance, plaintiff challenged the comment that his written work was occasionally late, as well as Consul General Dyels' decision not to recommend him for tenure that year. When the agency denied the grievance, plaintiff again appealed to the FSGB.

The FSGB denied plaintiff's grievance on December 23, 1997. In particular, the FSGB found that the Consul General's comments about late work had a "foundation in fact" and that the decision not to recommend the plaintiff for tenure was not contrary to agency regulations. Plaintiff now challenges both of those determinations, and he also argues that the FSGB's decision fails to adequately consider material facts and state the Board's reasoning.

**2.** "Coning" refers to the process by which a Foreign Service Officer is assigned to a particular career path.

## II. LAW AND APPLICATION

### A. *Standard of Review*

22 U.S.C. § 4140 provides that decisions of the FSGB are reviewable in district court under the arbitrary-and-capricious standard set forth in the Administrative Procedure Act, 5 U.S.C. § 706. Judicial review under the arbitrary-and-capricious standard is necessarily deferential, both to the agency's factual determinations and to its reasonable interpretations of those statutes within the agency's sphere of expertise. · See *United States v. Paddack,* 825 F.2d 504, 514 (D.C.Cir.1987) (deferring to the FSGB's reasonable interpretations of regulations governing foreign service matters). The Court's responsibility, then, is not to determine if the agency decided the matter as the Court would have, but rather to ensure that the "decision was based on a consideration of the relevant factors and [that] there has [not] been a clear error of judgment. Although this inquiry into the facts is to be searching and careful, the ultimate standard of review is a narrow one. The court is not empowered to substitute its judgment for that of the agency." *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 416, 91 S.Ct. 814, ·28 L.Ed.2d 136 (1971).

### B. *Standing*

The defendants' first argument is that the plaintiff lacks standing to challenge the FSGB's decisions. This argument merits little discussion.

Defendants first assert that plaintiff has not suffered "injury in fact," because the 1994–95 EER was removed from his records and therefore he cannot be harmed by a record that does not exist. This somewhat cute argument ignores that the plaintiff was denied the substantive relief he requested, including retroactive tenure or a reconstituted CTB, and a chance to be reconed[2] on an accurate factual basis in-

cluding his proposed 1994–95 memorandum. Moreover, the mere denial of the second grievance is sufficient "injury in fact" to satisfy the standing requirements, as plaintiff alleges that the 1993–94 contains falsely prejudicial information. Defendants' arguments that plaintiff has suffered no cognizable injury are baseless.

Likewise, defendants' argument that a favorable decision by this Court would not likely redress plaintiff's injuries must fail. Defendants argue that the FSGB does not have the authority to grant tenure. This is patently incorrect; as the Court of Appeals has noted, the FSGB may make a tenure recommendation to the Secretary of State, and the Secretary may refuse that recommendation only if it is found to be contrary to law or to adversely affect the foreign policy or national security of the United States. *See Miller v. Baker,* 969 F.2d 1098, 1098 (D.C.Cir.1992); 22 U.S.C. § 4137(d). Should the Court order the FSGB to make such a recommendation, or even to reconsider its refusal to make such a recommendation in light of a different legal standard (as plaintiff has requested), the plaintiff's injury will be redressed.

Plaintiff has standing to challenge the FSGB's decisions. The Court will therefore address each of the two grievances in the order they were filed with the Department.

### C. *FSGB Case 96–094: Plaintiff's First Grievance*

 Plaintiff's amended complaint identifies two alleged defects in the FSGB's denial of his first grievance appeal—that the Board applied an incorrect standard, and that even had it applied the correct standard its decision was arbitrary and capricious. Because the Court will sustain the plaintiff's challenge on the first ground, it need not reach the second issue.

Plaintiff argues that the Board applied an inappropriate legal standard in its consideration of his grievance by placing upon him the burden of demonstrating by a preponderance of the evidence that the

CTB would have selected him for tenure if not for the allegedly falsely prejudicial comments in the 1994–95 EER. The Court agrees that this is contrary to 22 C.F.R. § 905.1(b), and therefore the case will be remanded to the FSGB for further proceedings consistent with today's decision.

22 C.F.R. § 905.1 provides as follows:

(a) In all grievances other than those concerning disciplinary actions, the grievant has the burden of establishing, by a preponderance of the evidence, that the grievance is meritorious.

(b) Where a grievant establishes that an evaluation contained falsely prejudicial material which may have been a substantial factor in an agency action, and the question is presented whether the agency would have taken the same action had the evaluation not contained that material, the burden will shift to the agency to establish, by a preponderance of the evidence, that it would have done so.

(c) Where a grievant establishes that a procedural error occurred which is of such a nature that it may have been a substantial factor in an agency action with respect to the grievant, and the question is presented whether the agency would have taken the same action had the procedural error not occurred, the burden will shift to the agency to establish, by a preponderance of the evidence, that it would have done so.

The FSGB's interpretation of this provision in plaintiff's case conflates the issues of (1) whether the error or falsely prejudicial material "may have been a substantial factor" in the decision and (2) whether the agency would have taken the same action anyway. The effect, clearly stated in the FSGB's decision, is to place the burden on the grievant of proving that the agency would *not* have taken the same action anyway, in clear and irreconcilable contradiction of the language of 22 C.F.R. § 905.1(b). For example, the Board states: "We find that Shea has failed to

present preponderant evidence that an adverse tenure determination would not have been made even if everything which he alleges is falsely prejudicial material had been excised from the EER." *See* Admin. Rec. 96–094 at 145. Under the plain language of 22 C.F.R. § 905.1(b), it was not plaintiff's burden to present such evidence. To the extent that the FSGB's decision rests on this allocation of the burden of proof, the decision is arbitrary and capricious and must be overturned.

 Defendants argue, however, that the portion of the FSGB's decision (mis)applying 22 C.F.R. § 905.1(b) is dictum, because the Board found that plaintiff had failed to establish by preponderant evidence that his claim was meritorious as required by 22 C.F.R. § 905.1(a) and that "falsely prejudicial material . . . may have been a substantial factor" in the agency's decision as required by 22 C.F.R. § 905.1(b). This position is consistent with the FSGB's written decision. Before even reaching the burden-shifting question, the FSGB referred to 22 C.F.R. 905.1(a) and stated: "In view of our discussion above, and in light of the remedies that the Department has already provided to grievant, we find that he has not carried his burden to justify any further relief." However, the agency is not free to apply the general burden of proof provision of 905.1(a) in such a way as to render the 905.1(b) burden-shifting provision meaningless, at least not in a case such as this one which was focused primarily on falsely prejudicial material, the explicit subject of 905.1(b). Although the courts owe substantial deference to the FSGB's interpretation of the regulations governing its decisionmaking, the courts need defer only to those interpretations that are reasonable. *See Paddack*, 825 F.2d at 514. An interpretation whose effect is to erase a more specific mandate (contained in the very same section) cannot be reasonable, and to the extent that the FSGB denied plaintiff's claim concerning falsely prejudicial material on the basis that he had failed to prove that

his entire grievance was meritorious, the Board's decision must be overturned.

Because the Board proceeded to consider the burden-shifting issue, however, it is unclear whether it intended to rely solely on its general 905.1(a) determination. Defendants argue that the FSGB determined that the plaintiff had not established that falsely prejudicial material may have been a substantial factor in the agency's decision; in fact, the FSGB's written decision says as much. *See* Admin. Rec. 96–094 at 146. Even a cursory reading of the decision, however, shows that the Board was actually addressing the distinct issue of whether the agency decision would in fact have been the same absent that material:

> [W]e cannot conclude that it is more likely true than not that Shea would have been awarded tenure by his first CTB. *Stated another way,* we find that Shea has not shown by the requisite standard of proof that falsely prejudicial material in his EER may have been a substantial factor in tenure denial, thereby presenting the question of what might have happened if the allegedly inappropriate material were not present. Nor are we to engage in undue speculation about what might have happened had the Department not erred.

*See id.* The FSGB appears to have assumed *arguendo* that plaintiff had demonstrated the existence of falsely prejudicial material, but to have denied relief on the basis not that the material could not have been a substantial factor in the decision but on the distinct ground that plaintiff had failed to prove that it would have caused a different decision to be made. This is entirely at odds with the plain language of § 905.1(b), and it cannot be upheld. To the extent that the FSGB read 905.1 to permit such reasoning, that interpretation was unreasonable. If, on the other hand, the Board was actually applying the correct standard and in fact determined that plaintiff had failed to establish that falsely prejudicial material *may* have been a *substantial factor* in the agency's

decision, then the Board must state such determination intelligibly and support it with at least some statement of reasons to survive arbitrary-and-capricious review. It will have the opportunity to do so on remand.

The Court notes that it does not address the issue of what relief should be granted to the plaintiff should the Board reach a different decision as to the merits of his claim of falsely prejudicial material. The Court merely holds that the Board must determine the relief to which plaintiff is entitled using the standards prescribed by law. The FSGB's decision in case 96–094 will be overturned, and the grievance appeal will be remanded to the Board for further proceedings consistent with today's decision.

### D. FSGB Case 97–026: Plaintiff's Second Grievance

Plaintiff presents four challenges to the FSGB's decision in case 97–026:(1) that the Board failed to provide a sufficient statement of findings and reasons, (2) that the Board improperly failed to consider the agency's denial of a reconstituted CTB a "grievance," (3) that the Board erred in upholding Consul General Dyel's decision not to recommend plaintiff for tenure, and (4) that the Board erred in finding that the challenged comments in the 1993–94 EER had a foundation in fact. None of these arguments prevails under the arbitrary-and-capricious standard.

■ First, plaintiff argues that the FSGB's decision violates 22 U.S.C. § 4137(a), because (according to the plaintiff) several material issues were not considered, some findings were "suggested rather than explicitly made," legal standards were not disclosed, and credibility determinations were made without a hearing or explanation. Plaintiff, however, demands too much. The Board's ten-page decision is deliberate, fact-specific, and well-reasoned. It shows a full consideration of relevant issues and provides a sufficient basis for review in the federal courts. The Board's written decision is therefore sufficient.[3]

It is worth noting that, here again, plaintiff has discussed the facts underlying the CTB's decision and comments contained in the 1993–94 EER at great length. It is not the task of this Court, however, to substitute its own factual findings for those of the FSGB absent a showing that the Board failed to consider the relevant facts or made a clear error, neither of which is demonstrated by the issues plaintiff claims should have been addressed in the Board's written decision.

■ Plaintiff's second contention is that the agency improperly refused to treat the denial of a reconstituted tenure board by the Department as a grievable action. This issue does not appear to have any direct bearing on today's decision. In any event, the Court would merely note that the denial of relief in administrative proceedings is generally not in itself grievable before the agency. Also, if the denial of relief did constitute a distinct grievance, it seems that the plaintiff would have to initiate a fresh grievance procedure to challenge it rather than begin at the administrative appeals stage. To the extent that this aspect of plaintiff's challenge is meaningful, it is denied.

■ Third, plaintiff alleges that Consul General Dyel's decision not to recommend him for tenure after his first year of service was inconsistent with agency regulations. In particular, plaintiff notes that Dyel explicitly stated that plaintiff "can and will serve successfully across a normal

---

3. The Court declines to decide whether the FSGB's proceedings in this case constitute formal or informal adjudication. *Cf. Reiner v. United States,* 686 F.2d 1017, 1022 n. 4 (D.C.Cir.1982) (declining to decide if an FSGB hearing was formal or informal adjudi-cation); *Bettucci v. United States,* 14 F.Supp.2d 45, 51 (D.D.C.1998) (finding that a mandatory FSGB hearing on obligatory retirement decision was formal adjudication). The FSGB's decision is sufficient in either case.

career span, including FS–01." Plaintiff asserts that this must necessarily result in a recommendation for tenure according to department regulation 3 FAM 574.3, which states that the rater and reviewer are to evaluate a candidate's "demonstrated potential . . . to perform effectively as a Foreign Service officer with normal development up to and including class FS–1, and include a recommendation regarding whether the candidate should be granted career status.' That demonstrated potential, 'assuming normal growth and career development,' is identified as the 'sole criterion for a positive tenuring decision' by 3 FAM 577.1 and the CTB Precepts." Admin. Rec. 97–026 at 125–26. Plaintiff's interpretation is unsupportable. Regulation 3 FAM 574.3 mandates two distinct actions by the rater and reviewer: an assessment of demonstrated potential, and a recommendation regarding tenure. The FSGB determined that Dyel's comments need not mechanically lead to a recommendation for tenure, and the Court cannot find this interpretation to be unreasonable. In fact, were the recommendation to follow mechanically from the language of a reviewer's evaluation, then the recommendation itself would be superfluous. The Court declines to impose such an anomalous reading on the FSGB. A more reasonable reading, and that apparently adopted by the Board, is that the reviewing officer is to evaluate the candidate's demonstrated potential *for the benefit of those who will review the reviewing officer's evaluation*, but also to give the reviewing officer's personal bottom-line assessment of whether the candidate's "demonstrated potential" justifies career status at that time. The Court will not overturn the Board's decision on this issue.

 Finally, plaintiff challenges the FSGB's finding that the comments in the

1993–94 EER had a foundation in fact and thus would not be expunged. Plaintiff would have the Court review his evidence and find that the Board's determination was against the "weight of the evidence." This is not the Court's role in reviewing the Board's factual determinations, however, and the Court declines to overturn the Board's finding in this regard. The Board indicated that it had considered plaintiff's evidence and found it inconclusive. *See id.* at 124–25. Based on the evidence in the record, the FSGB found that "the mild criticism of grievant has a foundation in fact." The Court does not find this determination to be arbitrary or capricious, and it is sustained.

For the reasons just set forth, the Court will uphold the FSGB's decision in case 97–026. The defendants' motion will therefore be granted as to this claim.

### III. CONCLUSION

For the reasons set forth above, the defendants' motion to dismiss or, alternatively, for summary judgment will be granted in part and denied in part. Summary judgment will be entered in the defendants' favor as to the 97–026 decision of the FSGB. Summary judgment will be entered in plaintiff's favor with regard to the Board's decision in 96–094, and that case will be remanded to the FSGB for further proceedings consistent with today's decision.[4]

A separate order will issue this date.

### ORDER

Upon consideration of the defendants' motion to dismiss or, alternatively, for summary judgment, plaintiff's opposition thereto, defendants' reply, and the record in this case, and for the reasons set forth

---

4. Although plaintiff submitted a "Memorandum in Support of Plaintiff's Motion for Summary Judgment," he does not appear to have filed an actual motion. Nevertheless, the defendants have been offered adequate notice and opportunity to address the issues in the case, and therefore summary judgment is appropriate on the Court's own initiative. *See Judicial Watch v. U.S. Dept. of Commerce,* 34 F.Supp.2d 28 (D.D.C.1998) (discussing the standard for granting summary judgment sua sponte).

in the memorandum opinion issued this date, it is hereby

ORDERED that defendants' motion is GRANTED in part and DENIED in part; and it is further

ORDERED that summary judgment is entered against the plaintiff, affirming the Foreign Service Grievance Board's decision in case 97–026; and it is further

ORDERED that summary judgment is hereby entered sua sponte against the defendants, overturning the Foreign Service Grievance Board's decision in case 96–094, and remanding that case to the FSGB for further proceedings consistent with the memorandum opinion issued this date.

SO ORDERED.